UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11297-GAO

TSLF DELRAY, LLC,
Plaintiff,

v.

DON WOODEN, MELINDA WOODEN, LAFAYETTE ONE, LLC, MELADON IX, LLC (a Delaware limited liability company), MELADON IX, LLC (a Florida limited liability company), MELADON DEVELOPMENT GROUP, LLC, MELADON MANAGEMENT PARTNERS, LLC, MELADON PARCEL B, LLC, OCEAN DEEP ENTERPRISES, LLC, PANPAC V, LLC, and WOODLAND DEVELOPMENT #3, LLC,
Defendants.

OPINION AND ORDER
March 27, 2014

O'TOOLE, D.J.

## I. Background

The plaintiff, TSLF Delray, LLC, alleges multiple claims for breach of contract (and related claims for breaches of the implied contractual covenant of good faith and fair dealing), as well as claims for fraud/misrepresentation, fraudulent transfer in violation of Massachusetts General Laws Chapter 109A, civil conspiracy, and violation of Massachusetts General Laws, Chapter 93A. The defendants have moved to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff opposes the motion to dismiss.

The claims arise out of a series of loan and security agreements entered into by the parties between 2007 and 2011. In 2007, defendant Meladon IX, LLC ("Meladon IX") entered into a loan agreement ("Loan Agreement") with Tremont Net Funding I, LLC ("Tremont"), in which Tremont loaned Meladon IX $25,000,000 for the development of certain real estate in Florida

(the "Florida Property").[1] Meladon IX is owned and controlled by Don and Melinda Wooden. The loan was secured by a mortgage on the Florida Property.

In 2009, Meladon IX defaulted on the original loan. The parties then entered into an amendment to the Loan Agreement ("First Amendment to Loan Agreement"), in which Meladon IX pledged as additional security 49% of the membership interest of an affiliate, Lafayette One II, LLC, in Lafayette One, LLC, a single-purpose entity that owned an office building in Virginia ("Lafayette Property").[2] Lafayette One II, which owned 100% of the membership interest in Lafayette One, simultaneously entered into an Ownership Interests Pledge and Security Agreement with Tremont ("Lafayette Pledge Agreement").

In 2011, Meladon IX again defaulted on the loan on the Florida Property. Tremont began foreclosure proceedings, and the parties subsequently entered into a Deed in Lieu of Foreclosure and Settlement Agreement ("Settlement Agreement"), whereby Meladon IX conveyed the Florida Property to Tremont's designee, the plaintiff here. The Woodens and three of their entities, including Lafayette One II, gave a promissory note ("Promissory Note") to satisfy the remaining $1,600,000 owed to the plaintiff. The parties then entered into an amendment to the Lafayette Pledge Agreement ("First Amendment to Lafayette Pledge Agreement"), which, *inter alia*, secured the Promissory Note with the pledge of the 49% membership interest in Lafayette One.

The plaintiff alleges that in 2012 the defendants caused Lafayette One to sell its only asset, the Lafayette Property, in violation of their contractual agreements, rendering the pledged 49% membership interest in Lafayette One essentially worthless. According to the complaint, the

---

[1] The plaintiff TSLF Delray is the successor in interest to Tremont Net Funding I as to the matters at issue.
[2] Therefore, the collateral was the 49% membership interest in Lafayette One, rather than the Lafayette Property itself.

Woodens not only gained a 30% interest in the new owner of the Lafayette Property, but also caused other of their entities to receive fees from the real estate sale amounting to just shy of $600,000.

## II. Motion to Dismiss

In evaluating a motion to dismiss, the Court "must take all the factual allegations in the complaint as true." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).The Court reviews Count IX's fraud/misrepresentation claim under the standard described by Federal Rule of Civil Procedure 9(b), which requires that "in all averments of fraud . . . , the circumstances constituting the fraud . . . shall be stated with particularity."

### A. Contract Claims

The defendants have moved to dismiss Counts I through VIII on the theory that the complaint fails to allege specific contractual provisions the defendants are claimed to have violated. The eight counts are paired in four groups, with the odd numbered count alleging a breach of contract claim, and the corresponding even numbered count alleging breach of the implied covenant of good faith and fair dealing associated with the relevant contract claim. Thus, Counts I and II address claims regarding the Lafayette Pledge Agreement and First Amendment to the Lafayette Pledge Agreement, Counts III and IV pertain to the Promissory Note, Counts V and VI relate to the First Amendment to the Loan Agreement, and Counts VII and VIII concern the Settlement Agreement.

#### 1. *Counts I and II*

Counts I and II alleged that the sale of the Lafayette Property to another entity owned by the defendant Woodens, and the failure to pay any proceeds received from that sale, violated the

3

terms of the Lafayette Pledge Agreement and the First Amendment to Lafayette Pledge Agreement (collectively, the "Lafayette Pledge Agreements"), and, subsequently, the related covenant of good faith and fair dealing. (Notice of Removal, Ex. A at p.16-18 (dkt. no. 1-1).)

The defendants' motion to dismiss Counts I and II is DENIED. Taking the plaintiff's allegations as true, the Lafayette Pledge Agreements contain multiple contractual provisions that may have been breached by the defendants' conduct. For example, ¶55 of the Complaint discusses §6(b)(iii) of the Lafayette Pledge Agreement, which prohibits the defendant Woodens, through Lafayette One, II LLC, from "agree[ing] to the discontinuance of the business . . . of [the] Company." (Id. at p. 13.) The First Amendment to the Operating Agreement of Lafayette One, LLC (attached to the Complaint as Exhibit I) states that Lafayette One, LLC is a single-purpose entity "organized solely for the purpose of owning the property." (Id. at p. 84.) Thus, it is plausible that the sale of the Lafayette Property could in fact have constituted a "discontinuance of the business" of Lafayette One, LLC. See Iqbal, 556 U.S. at 678.

    *2.    Counts III and IV*

Counts III and IV alleged that the sale of the Lafayette Property to another entity owned by the Woodens, and the failure to pay any proceeds received from that sale, violated the terms of the Promissory Note, and, correspondingly, the related covenant of good faith and fair dealing. (Notice of Removal, Ex. A at p. 18-20 (dkt. no. 1-1).)

The defendant's motion to dismiss Counts III and IV is DENIED. The Promissory Note required the defendant Woodens to pay a certain amount to the plaintiff each year, the calculation of which begins with the "gross cash flow" of the Woodens in the preceding twelve (12) months. (Id. at p. 162.) The "gross cash flow" includes cash from "any source whatsoever." Id. The Promissory Note also states that no entity of the Woodens "shall retain any earnings or

cash and all such entities shall distribute cash to its shareholders . . . not less than annually prior to the annual payment date" of the Promissory Note. Id. Taking as true the plaintiff's allegation that entities owned by the Woodens received approximately $593,000 from the sale of the Lafayette Property, and that the plaintiff received no promised benefit from any of these proceeds, the complaint in Counts III and IV is "plausible on its face." Iqbal, 556 U.S. at 678.

        3.      *Counts V and VI*

Counts V and VI alleged that the sale of the Lafayette Property to an entity partly owned by the Woodens, and failure to pay any proceeds received from the sale, violated the terms of the First Amendment to Loan Agreement, and, subsequently, the related covenant of good faith and fair dealing. (Notice of Removal, Ex. A at p. 20-22 (dkt. no. 1-1).) Specifically, the plaintiff cites ¶4(e) of the First Amendment to Loan Agreement, which required the defendant Woodens to pay to the plaintiff any proceeds arising from the sale of the Lafayette Property. (Id. at p. 11.)

The defendant moved to dismiss Counts V and VI on the grounds that the First Amendment to Lafayette Pledge Agreement specifically deleted any reference to the Loan Agreement from the term "Loan Documents" in the Lafayette Pledge Agreement, and, therefore, the Loan Agreement is no longer in effect.[3] (Id. at p. 168.)

The defendant's motion to dismiss Counts V and VI is GRANTED. The First Amendment to the Lafayette Pledge Agreement expressly removed the Loan Agreement from the parties' definition of both "Loan Documents" and "Secured Obligations" subject to their revised agreements. (Id.) It appears plain from the documents themselves that, upon the signing of the Settlement Agreement (signed contemporaneously with the First Amendment to Lafayette

---

[3] The plaintiff's opposition incorrectly attributes this argument to a recital in the Settlement Agreement. (Plaintiff's Opp. to Mot. to Dismiss, at p. 8-9 (dkt. no. 28).)

Pledge Agreement), the Loan Agreement was no longer operative and could not thereafter be breached. Nor was there any enduring implied covenant with respect to the abrogated agreement.

### 4. *Counts VII and VIII*

Counts VII and VIII allege that the sale of the Lafayette Property to another entity owned by the Woodens, and their failure to pay over any proceeds received from the sale, violated the terms of the Settlement Agreement as well as the covenant of good faith and fair dealing. (Notice of Removal, Ex. A at p. 22-24 (dkt. no. 1-1).)

The defendant's motion to dismiss Count VII is DENIED. The Settlement Agreement incorporated by reference the Lafayette Pledge Agreement and the Promissory Note, both of which survive the defendants' motion to dismiss. (Id. at p. 111.) I have concluded that the claims arising under those documents are adequately pled; the same is true as to Counts VII and VIII.

### B. Non-Contract Claims

The defendants have also moved to dismiss Counts IX through XII. Count IX alleges a claim for fraud/misrepresentation, Count X alleges a claim for fraudulent transfer in violation of Mass. Gen. Laws. ch. 109A, § 5, Count XI alleges a claim for civil conspiracy, and Count XII alleges a claim for unfair and deceptive acts in violation of Mass. Gen. Laws. ch. 93A. (Notice of Removal, Ex. A at p. 24-30 (dkt. no. 1-1).)

The defendants' motion to dismiss Counts IX through XII is DENIED. No extended discussion is necessary. After review of the Complaint and relevant motion papers, I conclude that the plaintiff has alleged facts which, if ultimately proven, could establish the defendants' liability as to these claims.

## **IV.** **Conclusion**

For the reasons stated herein, the defendants' motion to dismiss (dkt. no. 23) is GRANTED as to Counts V and VI, and DENIED as to all remaining counts.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge